AUGUSTUS C. MOORE and IRA M. MOORE, Respondents, *v.* JAMES T. HAMILTON, Appellant.

In case of the death of a party to an action, after an order of reference and partial trial before the referee, if the action is revived, the case proceeds in all respects as if the substituted party had been in from the beginning.

The order of reference continues in force and the proceedings already had are operative and valid.

If from any special circumstances the reference or trial should not continue, the party aggrieved must apply to the court for relief, by motion.

Where it is one of the principal issues whether the possession of real estate is adverse to, or as a tenancy under, the plaintiff, evidence of the acts and declarations of the person in possession, tending to characterize his relation to the property, is admissible, although he is not a party to the action.

In ejectment, it appeared that both parties claimed under F., the plaintiffs as grantees of a purchaser on execution sale against him, and the defendant by subsequent conveyance from F. The defendant also claimed to be mortgagee in possession, as assignee of a mortgage executed by F. to M., prior to the judgment. F. testified that M. sold this mortgage to him by parol, in consideration of his agreement to support her for life, which agreement he had performed before he transferred it to the defendant; and that his possession was as owner of the premises, until he conveyed it to the defendant. The plaintiffs were allowed to give in evidence a satisfaction of the mortgage, executed and delivered by M. to them, and to produce evidence tending to show that it was done by the advice and in the presence of F., during the plaintiffs' negotiations for the purchase of the premises; that they purchased at the request of F., and that he continued in possession as their tenant, in consideration that he should support M.; also evidence of parol declarations of F. characterizing his possession, and correspondence between the plaintiffs and their vendor, with evidence that it was had by request and with the knowledge of F.; also bankruptcy proceedings by F., containing his sworn statements as to the nature of his possession; a lease by the plaintiffs and occupation of a portion of the premises by the lessee under it, without objection by F., while the latter continued in possession of the remainder; and a deed from the plaintiffs to F. of other lands, previous to his mortgage to M., subject to the right of M. to use the same for life, it appearing that F. had sold these premises without any reservation soon after the deed was given.—*Held*, that there was no error in admitting this evidence.

Evidence of the declaration of F., oral or by the bankruptcy proceedings, was competent as characterizing his possession. The proceedings in bankruptcy were also admissible to show that, if the mortgage to M. and its sale to F. were valid, it passed to his assignee in bankruptcy, and the defendant took no interest by the pretended transfer, subsequently, to him. The correspondence, having been with F.'s knowledge and consent, was admissible on the question of his relation to the property and to contradict him. Both the correspondence and the satisfaction piece, being contemporaneous with the plaintiff's negotiations for the purchase, were competent, as part of the *res gestæ* and also by way of estoppel. The lease, in connection with the divided occupation without objection on the part of F., was also admissible on the question of

F.'s alleged ownership. The deed was also competent, as bearing upon the consideration and validity of the mortgage. It thus appeared that M. had a life estate in those premises, and this tended to prove that the mortgage was without consideration and void, as against the judgment through which the plaintiffs derived title.

(Argued May 9; decided September 13, 1871.)

APPEAL from the Supreme Court, fifth district, affirming at General Term a judgment in favor of the plaintiffs on the report of a referee.

The action was for the recovery of the possession of a lot of land, with a dwelling-house thereon, in the village of Fabius, Onondaga county, in the occupation of the defendant. Both parties claimed to derive title from William Frink, as the common source. The trial was had before the Hon. George N. Kennedy, as sole referee.

The plaintiffs derived their title under a deed from the sheriff of Onondaga county to George Pettit, dated May 23, acknowledged and recorded May 25, 1840, made pursuant to a sale on an execution issued on a judgment recovered in the Supreme Court, February 22, 1838, in favor of Horace Wheaton against William Frink and another, by confession, for $1,700 debt and $25.71 costs.

George Pettit conveyed to Augustus C. Moore and Charles Moore, by deed dated September 20, 1840, acknowledged June 26, 1843, in consideration of $1,000. Charles Moore, one of the grantees, and one of the plaintiffs at the commencement of the action, died during the trial, having devised his interest in the premises, by his will, to his son, Ira M. Moore, who was substituted as one of the plaintiffs, in the place of the testator, by an order of the Supreme Court, April 21, 1863, under section 121 of the Code. The possession of the premises by the defendant, at the commencement of the action, was admitted.

The defendant derived his title by a deed to him from William Frink, dated February 20, 1860, acknowledged the same day, in consideration of $900. He also claimed to hold as mortgagee in possession, under a mortgage of the premises

from William Frink to Abigail Middlebrook, dated the 16th, recorded the 19th February, 1838, to secure the payment of a bond for $1,437, made by Frink to her, payable with interest in ninety days from date. Neither the bond nor the mortgage was produced at the trial, although called for by the plaintiffs, nor proven to have been lost or destroyed, but a copy from the record was read. The defendant produced and gave in evidence an assignment of the said mortgage to him from Frink, dated February 20, 1860. William Frink testified, as a witness for the defendant, that he had been in possession of the premises, claiming ownership and title, from 1830, when he purchased by deed from Horace Griswold, till February 20, 1860, when he conveyed to the defendant. He also testified that Abigail Middlebrook sold and transferred the said mortgage to him, by parol, the 1st of October, 1840, in consideration of his agreement to support her during life, which he had performed until her death, occurring in 1853.

The plaintiffs gave in evidence a satisfaction piece of the said mortgage, executed by Abigail Middlebrook, dated October 4th, 1840, and evidence tending to prove that the satisfaction piece was executed and delivered to Charles Moore by the advice and in the presence of William Frink, at or before the conveyance of the premises by George Pettit to Augustus C. and Charles Moore, and that they purchased the premises at the request of William Frink, when summary proceedings under the statute were pending against him, instituted by George Pettit, to obtain possession of the premises, after he had acquired title under the sheriff's deed; that Frink had continued in occupation from that time as the tenant of Augustus C. and Charles Moore, under a parol agreement to support their mother, and the mother of Frink's wife, Mrs. Middlebrook, for the use of the said premises.

The plaintiffs also gave in evidence, under objection and exception by the defendant, several statements made by Frink while he was in the occupation of the premises, but after the conveyance to Augustus C. and Charles Moore, in substance that they owned the premises, and that he (Frink) did not

own them. Also the bankruptcy proceedings of Frink in the United States Court in 1842, wherein Frink swore that he occupied the premises as tenant at will. Also a letter, written by George Pettit to Augustus C. Moore, with evidence tending to prove that it was written at the request of Frink, asking him to join with Charles Moore in becoming the purchaser of the premises, to furnish a house for their mother, Mrs. Middlebrook, and their sister, the wife of Frink, and the reply of Augustus C. Moore. Also a lease for one-half of the premises from Charles Moore to Anson Ellis, April 1, 1859, and his occupation thereunder and payment of rent to Charles Moore, the said Frink at the same time occupying the other part of the dwelling-house. Also a deed from Charles Moore to William Frink, in 1836, of a farm of land, consideration $1,000, reserving the use and occupancy to John and Abigail Middlebrook during their natural lives, or the life of either of them.

After the action was revived in the name of Ira M. Moore as one of the plaintiffs and the successor in interest of Charles Moore, deceased, the defendant insisted that the reference was thereby vacated, and objected to any further proceedings in the trial before the referee. This objection was overruled and the defendant excepted.

The referee found that William Frink was the owner of the premises in 1838. He also found the recovery of the judgment against him in favor of Wheaton, the lien thereof upon the premises, the execution issued thereon and the sale and conveyance by the sheriff to George Pettit, the conveyance from Pettit to Augustus C. and Charles Moore at the request of Frink, and the payment of $1,000 as the consideration; that Frink continued in possession thereafter, as the tenant of Augustus C. and Charles Moore, until he conveyed the premises and delivered the possession to the defendant; that Frink executed a mortgage on the premises to Mrs. Middlebrook, previous to the recovery of the judgment by Wheaton; that she did not sell it to Frink; that it was not valid as a mortgage in Frink's hands, and was not a lien on the pre-

mises; that Mrs. Middlebrook was the owner of the mortgage on the 4th of October, 1840, and then satisfied and discharged it to Augustus C. and Charles Moore, while she was the owner of it; that Frink was their tenant and supported their mother for the use of the premises; that defendant was wrongfully in the possession of the premises, and that the plaintiffs were entitled thereto. And as conclusions of law the referee found that the defendant acquired no title by virtue of the deed from Frink, and no interest by the assignment of the mortgage; that Augustus C. and Charles Moore were, and the present plaintiffs are, the owners of the premises in fee, and are entitled to the possession thereof; that the defendant has no interest in the premises, and is wrongfully in possession; and the referee adjudged that the plaintiffs recover the premises, with their costs.

Judgment having been entered for the plaintiffs on this report, the defendant appealed to the General Term, where it was affirmed. The defendant thereupon appealed to the Court of Appeals.

The case below is reported, 48 Barbour, 120.

*Amasa J. Parker*, for the appellant, urged that it was error for the referee to proceed in the cause after revival. (*Sharp* v. *Mayor*, 31 Barb., 579; *Beardsley* v. *Stover*, 7 How., 295.) That the referee erred as to the admission of evidence. (*Van Duzen* v. *Thayre*, 14 Wend., 233; *Phyfe* v. *Riley*, 15 Wend., 248; *Carey* v. *Ruttolph*, 12 Barb., 637; 26 id., 383; 2 Barb. Ch., 197; *Towley* v. *Barry*, 16 N. Y., 497; *Bortle* v. *Swezer*, 4 Seld., 276; *Stark* v. *Bosewell*, 6 Hill, 405; *Page* v. *Cogwin*, 7 Hill, 361; *Jackson* v. *Sherman*, 6 John., 19; 15 id., 234; *Jackson* v. *Cary*, 16 John., 302; *Jackson* v. *Miller*, 6 Cow., 751; *Pitts* v. *Wilder*, 1 Comst., 525).

*W. H. Shankland*, on the question of evidence, cited *Cheney* v. *Arnold* (18 Barb., 440); 1 Barb., 610; 6 John. Ch., 166; 1 id., 344; 3 John., 499; 11 Wend., 534; 4 id., 558; 5 Cow., 123; 4 John., 430; 4 Cow., 587; *Jewett* v.

*Preston* (14 Shipley's R., 400); Jarvis' Bank'cy, 37; *Trescott* v. *King* (2 Seld., 147); *York* v. *Mead* (2 Seld., 449); 17 Abb., 342; 47 Barb., 253; 36 N. Y., 44.

LEONARD, C. Numerous exceptions were taken to the law as found by the referee and to the rulings at the trial upon the evidence introduced by the plaintiffs, but the exceptions urged in this court relate exclusively to the admission of evidence and alleged errors at the trial.

1st. It is insisted that the referee erred in proceeding with the trial after the substitution of Ira M. Moore as one of the plaintiffs, in the place of the original plaintiff, Charles Moore, deceased.

The Code provided, at the date of the trial, in 1863, section 121, that no action abated by the death of a party, if the cause of action survived or continued. The court were authorized, in case of death, on motion at any time within one year thereafter, to allow the action to be continued by or against his representative, or successor in interest. There is no objection urged to the regularity of the order reviving and continuing the action. The effect of the objection is, that the change in the parties has taken away the power of the referee, and that the evidence which had been given was between other parties, and hence did not apply to, or bind the new plaintiff, and he having the right to object, the defendant must have the same right. The action was not referrible except by the consent of parties. A consent was, in fact, given, but the parties were not then the same as at the conclusion of the trial. It is difficult to perceive the sequence from these facts which the defendant claims. When the action is revived, the issue and proceedings are taken up at the point where death, marriage or other devolution of the party, as to whom the change is made, left them. The new or substituted party takes the place of the former one, and the case is revived and proceeds in all respects as if the new party had been in the case from the beginning. The pleadings remain the same, and all the prior

proceedings are valid and operative. If any reason exists or has arisen for a change, it is incumbent upon the aggrieved party to apply to the court by motion, where, if the party is entitled to it, relief may be granted. The order of reference was not affected by the death or the substitution of the new party. If the defendant was able to show that there was any reason existing why the reference or the trial should not proceed, he should have moved the court in the usual form for relief. It was not in the power of the referee to grant any collateral relief pertaining to the practice which had been previously or was thereafter to be pursued. His duty was confined to hearing and deciding the action. His commission was contained in the order of reference. It was his business to pursue the directions of the order, unless he was relieved by some new direction emanating from the court. No good reason can be assigned why the proceedings of the trial, which had progressed nearly to a conclusion, were not continued where the action was revived, as well as the other proceedings. Clearly, if the defendant desired to be relieved he should have made his application to the court, upon affidavit showing the facts constituting the grounds for the relief demanded, and notice of his motion in the usual manner. The referee had no power to refuse to proceed, and correctly overruled the objection to proceeding with the trial before him. The notice of trial served by the defendant upon the plaintiff after the action was revived, was, I think, a waiver of the objection that the order of reference, as well as all other proceedings in the action, was not thereby revived.

2d. The principal question in the case was whether Frink held the premises by adverse possession, or as the tenant of Augustus C. and Charles Moore. His claim of such title was made under his own bond and mortgage to Mrs. Middlebrook, and the alleged sale of it by her to Frink. Evidence of his declarations, which tended to characterize his possession as a tenant of the Moores, was therefore admissible for that purpose. (*Pitts* v. *Wilder*, 1 Coms. R., 525; *Gibney* v. *Marchay*, 34 N. Y., 301.)

For this reason the proceedings of Frink in bankruptcy, wherein he swore that he occupied the premises as tenant at will, were admissible. If the mortgage was valid and he was the owner of it, it passed under that proceeding to the general assignee in bankruptcy, and the subsequent assignment by Frink to the defendant in 1860 transferred no interest. On both grounds the bankruptcy proceedings were properly admitted.

3d. The correspondence between Pettit and Augustus C. Moore, having been written at the request of Frink and with his knowledge, was admissible as evidence for the plaintiffs, as well as his oral statements in regard to the ownership and his tenancy, to contradict evidence which he had given, in chief, as a witness for the defendant, that the Moores purchased from Pettit without his (Frink's) knowledge or consent, and that he had been in possession as owner until his conveyance to the defendant. This correspondence and the satisfaction piece were also admissible for another reason. They were contemporaneous with the negotiations for the purchase of the premises by the Moores, and constituted a part of the *res gestæ*, inasmuch as the evidence tended to prove that Frink was a party to that transaction. Charles Moore objected to becoming a purchaser unless the mortgage was removed. There was evidence tending to prove that Frink knew of this objection, and advised Mrs. Middlebrook to execute the satisfaction piece. It formed part of the transaction whereby the Moores became the purchasers, and Frink, instead of objecting to the satisfaction, advised and concurred in it. Honesty and fair dealing required that he should then inform the Moores that he owned the mortgage, and that Mrs. Middlebrook had no right to satisfy it. His omission of this important obligation forever estopped him, and his successors in interest, from claiming under the mortgage. The correspondence, and the evidence of Frink's participation, was material, not only as a contradiction of his evidence in chief, but also to establish him as an actor in the sale of the premises to the Moores.

4th. The letting of a part of the premises from Charles Moore to Anson Ellis, while Frink was occupying another part, but receiving no rent from Ellis, and making no claim to receive rent, and not objecting to the occupation of Ellis, was evidence tending in some degree also to characterize the occupation by Frink. It was otherwise wholly immaterial and harmless. It was not proven that Frink knew that Ellis paid rent to Moore; but it was proven that Moore proposed a division of the rooms to be occupied by Frink and Ellis, and that Frink made no objection to such interference by Moore. The lease by itself proved nothing material, and was wholly immaterial, but the evidence connected with the tenancy of Ellis was material and admissible. The lease did not preju_dice the defendant.

5th. It was also objected that a deed of sixty acres of land from Charles Moore to Frink, in 1836, was improperly admitted in evidence.

It was admissible as bearing upon the evidence of Frink and upon the validity and consideration of the mortgage to Mrs. Middlebrook.

The deed to Frink reserved the use and occupation of the land to John Middlebrook and Abigail Middlebrook, his wife, during their lives, or the life of either of them.

Frink testified, as a witness for the defendant, that he agreed with Mrs. Middlebrook to support her during her life in consideration of her interest in that land, which he conveyed, within a few weeks after he acquired the title, to Oliver Andrews, without any reservation as to her life estate. He farther testified that becoming embarrassed with debts, and fearing that he should be unable by reason thereof to perform his agreement with Mrs. Middlebrook, he executed the mortgage for $1,437 to her upon the premises in dispute as a further security. This was the only consideration which the mortgage ever had. It further appeared from evidence on the part of the plaintiff that George Pettit insisted, after his purchase at the sheriff's sale, that the mortgage was without consideration, inasmuch as Mrs. Middlebrook had not exe-

cuted any conveyance or release of her life estate in the said sixty-six acres of land; that Pettit and Frink had then submitted the question to Mr. Birdseye, a lawyer, as to the validity of the mortgage under the said facts; that he had advised or decided that she could not hold the mortgage and also her life estate in the land, and in substance that the mortgage was for that reason without consideration; that in view of this advice or decision of Mr. Birdseye, Frink had advised Mrs. Middlebrook to execute the satisfaction of the mortgage to the Moores, and that she had then acted on that advice, and the Moores had become the purchasers of the premises from Pettit, and the satisfaction piece of the mortgage had been executed and delivered.

It was received as a link in the chain of evidence tending to overcome the validity of the mortgage, and to contradict the statement of Frink that it had been given for the interest of Mrs. Middlebrook in the farm of land, or as security for any valid agreement on the part of Mr. Frink for her support.

It proved that she had a life estate in the farm, and, with the other evidence, that it had not been released by her. It tended to prove that the mortgage was without consideration and void, as against the judgment under which the Moores had obtained their title from George Pettit.

These were the only exceptions that were urged upon our attention by the counsel for the appellant. None of them appear to have been well taken; and the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed, with costs.